UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

EMMA C.,[1]

                                    Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                                    Defendant.

Case No.:  20cv1681-LR

**ORDER REVERSING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING CASE FOR FURTHER PROCEEDINGS**

**[ECF NO. 17]**

On August 27, 2020, Plaintiff Emma C. commenced this action against Defendant Andrew Saul, Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for disability insurance benefits and supplemental security income.  (ECF No. 1.)[2]  On September 3, 2020, Plaintiff consented to Magistrate

---

[1]  The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules.  See S.D. Cal. Civ. R. 7.1(e)(6)(b).

[2]  Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

Judge jurisdiction.  (ECF No. 5).[3]  Defendant Commissioner filed the Administrative Record on March 8, 2022.  (ECF No. 13.)  On June 23, 2022, the parties filed a Joint Motion for Judicial Review of the final decision of the Commissioner of Social Security. (ECF No. 17 ("J. Mot.").)  The Joint Motion raises two issues: whether the ALJ properly considered the vocational testimony regarding (1) fine manipulation and (2) sitting.  (Id. at 4.)

For the following reasons, the final decision of the Commissioner is **REVERSED**, and the case is **REMANDED** for further proceedings.

# I.   BACKGROUND

## A.   Procedural History

On March 30, 2018, Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act.  (ECF No. 13 ("AR")[4] at 214–27.)  She alleged that she had been disabled since August 26, 2016, due to neuromyelitis optica.  (Id. at 264, 269.)  Plaintiff's applications were denied on initial review and again on reconsideration.  (Id. at 139–43, 148–53.)  An administrative hearing was conducted on November 7, 2019, by Administrative Law Judge ("ALJ") Michael B. Richardson.  (Id. at 50.)  On November 20, 2019, the ALJ issued a decision and concluded that Plaintiff was not disabled.  (Id. at 32–42.)  Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request on July 30, 2020.  (Id. at 1–7.)  She then commenced this action pursuant to 42 U.S.C. § 405(g).

/ / /

---

[3]  The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature.  See S.D. Cal. Gen. Order No. 707 (Apr. 12, 2019).

[4]  "AR" refers to the Administrative Record filed on March 8, 2022.  (ECF No. 13.)  The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF").  For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

**B.**    **Hearing Testimony**

    **1.**    **Plaintiff's testimony**

        Plaintiff testified that she previously worked as a shoe salesperson and waitress. (Id. at 55–56.)  She stopped working in August 2016 after the closure of the Nordstrom store at which she worked.  (Id. at 60–61.)  She started seeing doctors around that time because she sometimes stumbled and felt something was wrong.  (Id. at 61.)  Plaintiff was initially told that she had neuromyelitis optica but a year later was diagnosed with multiple sclerosis ("MS").  (Id. at 67–68.)  She served as a caregiver for her boyfriend's mother from August 2016 to mid-2018 but was not paid for this work.  (Id. at 60.)  At the time of the hearing, she had used a cane for over two years.  (Id. at 67.)  Her MS symptoms included eye floaters, fatigue, balance issues, and incontinence.  (Id. at 68.)  She had fallen as a result of her condition.  (Id. at 66–67.)  She was able to drive but generally did not, other than to the nearby grocery store once a week.  (Id. at 54–55.)  Her eye floaters appeared as black dots in her vision but did not prevent her from performing any activities.  (Id. at 71.)

        With respect to limitations with her hands, Plaintiff testified that she was not able to type because her hands "move on their own."  (Id. at 72.)  She could move her hands across a keyboard but "sometimes they skip."  (Id. at 73.)  She was able to handle her phone and use a knife and fork.  (Id. at 72.)  Threading a needle would be difficult for her but she was able to button her pants and shirt.  (Id. at 73.)

    **2.**    **Vocational expert's testimony**

        Gloria Lasoff testified as a vocational expert ("VE").  (Id. at 70.)  The ALJ asked the VE to hypothetically assume Plaintiff's limitations as follows:

> [A]ssume that at some point she was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; she could sit six hours and stand and/or walk two hours and she would need to be able to use an assistive device for all ambulation; she's unlimited in pushing or pulling other than as already restricted in the lifting and carrying; she can never climb ladders, ropes, or scaffolds or balance, but she can occasionally perform the remaining postural activities; she must avoid concentrated

exposure to wetness, vibrations, and hazards such as unprotected heights and dangerous moving machinery; and she can do no fine manipulation with her hands such as threading needles or assembling small parts, however, she can frequently handle, finger, and feel.

(Id. at 74.)  The VE responded that Plaintiff would not be able to perform her past relevant work but could perform the sedentary jobs of document preparer (Dictionary of Occupational Titles ("DOT") 249.587-018), production worker (DOT 734.687-074), and table worker (DOT 739.687-182), with national job numbers of 44,000, 50,000, and 10,000, respectively.  (Id.)  She stated that her response would not change if Plaintiff was limited to lifting and carrying ten pounds occasionally and less than ten pounds frequently.  (Id. at 75.)  The VE further testified that none of the three jobs required keyboarding, and thus her response would not change if the hypothetical included a restriction on keyboarding.  (Id.)  Finally, the VE asserted that the DOT does not specifically address conditions and limitations such as missing two days of work a month, being off task, keyboarding, fine manipulation such as threading needles and assembling small parts, or using assistive devices for ambulation.  (Id. at 76.)  For these issues, she was relying on her professional knowledge and experience.  (Id.)

## II.   LEGAL STANDARDS

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C.A. § 405(g), 421(d).  The scope of judicial review is limited, however, and the denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)); see also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035,

1039 (9th Cir. 1995)); see also Biestek v. Berryhill, ___U.S. ____, ____, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).  The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions.  Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020).  The district court may affirm, modify, or reverse the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  Id.

To qualify for disability insurance benefits and supplemental security income under the Social Security Act, a claimant must be determined to be disabled, defined as the inability to perform substantial gainful activity due to a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months or more.  See 20 C.F.R. §§ 404.1505, 416.905.[5]  The Commissioner makes this assessment by employing a five-step analysis outlined in 20 C.F.R. § 404.1520.  See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps).  The burden of proof is on the claimant at steps one through four.  Id. at 1098.  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities.  If not, the claimant is not disabled.  Id. § 404.1520(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to

---

[5]  The disability insurance benefits (DIB) and supplemental security income (SSI) regulations relevant to this case are virtually identical; therefore, only the DIB regulations will be cited in the remainder of this order.  Parallel SSI regulations are found in 20 C.F.R. §§ 416.900–416.999 and correspond with the last digits of the DIB cite (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

20cv1681-LR

preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. Id. § 404.1520(d). If not, the claimant's residual functional capacity is assessed and the evaluation proceeds to step four. Id. § 404.1520(e). Fourth, the Commissioner determines whether the claimant can do his or her past relevant work. If the claimant can do their past work, benefits are denied. Id. § 404.1520(f). If the claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. Id. § 404.1520(g)(1). If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, benefits are denied. Id. § 404.1520(g)(1).

## III.   DISCUSSION

Plaintiff raises two arguments. First, she contends that the ALJ improperly relied on the VE's testimony about fine manipulation. Second, she argues that the ALJ failed to properly address a conflict in the VE's testimony regarding sitting.

## A.   **ALJ's Decision**

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since August 26, 2016, her alleged onset date (step one). (AR at 34.) At step two, he found that Plaintiff's severe impairments included multiple sclerosis and hypertension. (Id.) The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Id. at 35.) He then made his finding regarding Plaintiff's residual functional capacity ("RFC"):

> [T]he undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in [20 C.F.R. § 404.1567(a) and 416.967(a)] except: she needs an assistive device for all ambulation; she is never able to balance or climb ladders, ropes, or scaffolds, but she can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; she must avoid concentrated exposure to wetness, vibration, and hazards such as unprotected heights and dangerous, moving machinery; she is unable to do fine manipulations such as threading needles or assembling small parts and

do keyboarding, but she is otherwise able to frequently handle, finger, and feel.

(Id. at 36.)  At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a shoe salesperson and waiter.  (Id. at 40.)  Nevertheless, he found that she was capable of performing the requirements of the representative unskilled sedentary occupations of document preparer, production worker, and table worker (step five).  (Id. at 41.)  Accordingly, the ALJ found that Plaintiff had not been under a disability from August 26, 2016, through the date of his decision.  (Id.)

## B.   Vocational Expert Testimony Regarding Fine Manipulation

### 1.   "Fine manipulation" and "fingering"

Plaintiff's argument that the ALJ improperly considered the vocational testimony regarding "fine manipulation" is multifaceted.  (J. Mot. at 4–9, 13–15.)  She first contends that because her RFC included a restriction on performing fine manipulations, she is precluded from doing any jobs requiring fingering and therefore unable to perform any of the jobs identified by the VE.  (Id. at 8–9.)  The Commissioner responds that the ALJ did not intend to eliminate all fingering when assessing Plaintiff's RFC; rather, he intended to exclude only activities requiring the highest level of finger dexterity.  (Id. at 11.)  The Court agrees with the Commissioner on this issue.

RFC is a function-by-function assessment of an individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  See Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996).[6]  "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  Id. at *2.  One of the abilities included in an

---

[6]  "SSRs reflect the official interpretation of the [Social Security Administration] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citation and internal quotation omitted).  "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless."  Id. (citation omitted).

RFC assessment is the ability to perform manipulative functions, which relates to the use of hands and fingers.  SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996).  Here, the ALJ stated the following regarding Plaintiff's ability to perform manipulative functions: "[S]he is unable to do fine manipulations such as threading needles or assembling small parts and do keyboarding, but she is otherwise able to frequently handle, finger, and feel."  (AR at 36.)  The ALJ made this finding after Plaintiff testified at her hearing that typing and threading a needle would be difficult, but she was able to handle her phone, use a knife and fork, and button her pants and shirt.  (Id. at 72–73.)  Plaintiff contends that the RFC formulated by the ALJ contained an inherent inconsistency because it precluded "fine manipulations" but otherwise permitted frequent "fingering."  (J. Mot. at 8.)  She argues that there "are no examples of fingering" that she can still do, and the ALJ's exclusion of "fine manipulations such as threading needles, assembling small parts, and keyboarding" eradicates any jobs requiring fingering.  (Id. at 9.)

The Court must therefore determine whether the ALJ properly found a distinction between "fine manipulations" and "fingering."  To ascertain the requirements of occupations as generally performed in the national economy at step five, the ALJ may rely on information from the DOT.  Pinto v. Massanari, 249 F.3d 840, 845–46 (9th Cir. 2001); see also SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (providing that at steps four and five, the Social Security Administration relies "primarily on the DOT (including its companion publication, the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)]) for information about the requirements of work in the national economy.").  The DOT defines "fingering" as "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling."  See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. C (1993), SCODICOT App. C (Westlaw).  "Fine manipulation" is not defined by the DOT.

Other district courts in this circuit have found "fine manipulations" to be more specific than, and a subcategory of, "fingering."  See, e.g., Jones v. Berryhill, Case No.

8

2:17-cv-003099-GMN-NJK, 2018 WL 11223431, at *4 (D. Nev. Oct. 29, 2018) (accepting VE testimony that fine manipulation, as compared to general fingering, involves "fine eye-hand coordination, such as crocheting, needlepoint, or soldering on electronic circuits boards"); see also Thomure v. Colvin, No. EDCV 12-1992-DTB, 2014 WL 1225016, at *2–3 (C.D. Cal. Mar. 21, 2014) ("[A] claimant restricted from fine fingering does not necessarily mean that the claimant cannot perform fingering in general where fine, delicate work is not required."); Schepps v. Comm'r Soc. Sec., No. 2:12-CV-0979-CMK, 2013 WL 5348129, at *4 (E.D. Cal. Sept. 23, 2013) (finding that although the claimant was limited to performing "fine or delicate tasks" only occasionally, the ALJ properly determined that the claimant could perform jobs requiring constant handling and fingering based on the VE's testimony that "very fine, delicate work is not required"). Furthermore, Social Security Ruling 96-9p provides that only "*significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." SSR 96-9p, 1996 WL 374185, at *8. Therefore, Plaintiff's contention that "fine manipulations" encompass all "fingering" is not supported by authority.

In sum, Plaintiff has not shown that the restriction on her ability to perform "fine manipulations" precluded her from doing jobs requiring "fingering."

### 2. Plaintiff's job-specific arguments

The second component of Plaintiff's argument regarding "fine manipulations" is that the ALJ failed to address conflicts between the DOT and the VE's testimony regarding the document preparer and production worker jobs, and the table worker occupation alone does not constitute a significant number of jobs in the national economy. (J. Mot. at 5–8.) The Commissioner responds that there was no obvious conflict between the VE testimony and the DOT requiring resolution. (Id. at 12.) The Court agrees with Plaintiff.

/ / /

/ / /

### a.    Document preparer job

Plaintiff contends that the ALJ failed to address a conflict between the DOT's description of the document preparer job and the VE's testimony, as the VE did not explain how a person who cannot type could perform the duties listed for this occupation. (Id. at 5–7.)   The job description for a document preparer (DOT 249.587-018) is as follows:

**249.587-018 DOCUMENT PREPARER, MICROFILMING**

Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife.  Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine.  Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. **Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material.**  Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

See DICOT 249.587-018, 1991 WL 672349 (emphasis added).

At step five in the sequential evaluation, the Commissioner has the burden "to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  Tackett, 180 F.3d at 1100; see also 20 C.F.R. § 404.1520(g)(1).  "In making this determination, the ALJ relies on the DOT, which is the SSA's 'primary source of reliable job information' regarding jobs that exist in the national economy."  Zavalin v. Colvin, 778 F.3d 842, 845–46 (9th Cir. 2015) (citations omitted); see also SSR 00-4p, 2000 WL 1898704, at *2.  In addition to the

20cv1681-LR

1  DOT, the ALJ may obtain VE testimony about specific occupations that a claimant can
2  perform considering the limitations set forth in her RFC.  Zavalin, 778 F.3d at 846.

3      Occupational evidence provided by a VE should generally be consistent with the
4  occupational information contained in the DOT.  See SSR 00-4p, 2000 WL 1898704, at
5  *2.  If the VE's opinion that the claimant "is able to work conflicts with, or seems to
6  conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to
7  reconcile the conflict before relying on the expert to decide if the claimant is disabled."
8  Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4p, 2000 WL
9  1898704, at *2).  "[T]he conflict must be 'obvious or apparent' to trigger the ALJ's
10  obligation to inquire further."  Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017)
11  (citing Gutierrez, 844 F.3d at 808).  The focus of the conflict inquiry is the "essential,
12  integral, or expected" job requirements set forth in the DOT.  Gutierrez, 844 F.3d at 808.

13      Here, the ALJ determined that Plaintiff cannot do keyboarding, (see AR at 36), and
14  the parties do not dispute this finding.  In his decision, the ALJ adopted the VE's
15  testimony that Plaintiff could perform work as a document preparer.  (Id. at 41.)  A
16  cursory review of the description of the document preparer job in the DOT, however,
17  indicates that keyboarding would be necessary to perform "essential, integral, or
18  expected" requirements of the job.  According to the DOT description, the general tasks
19  for this job include "prepar[ing] cover sheet and document folder for material and index
20  card for company files indicating information, such as firm name and address, product
21  category, and index code, to identify material."  See DICOT 249.587-018, 1991 WL
22  672349.  Based on common sense and real-world experience, a document preparer would
23  be required to keyboard or type to complete this task.  See Gutierrez, 844 F.3d at 808
24  (applying common experience to evaluation of DOT job description); Lamear, 865 F.3d
25  at 1206 (same).  Therefore, an obvious conflict existed between the VE's testimony that
26  Plaintiff could perform work as a document preparer, despite her keyboarding limitations,
27  and the job description in the DOT that indicates that keyboarding or typing would be
28  required.

1      Because there was an obvious or apparent conflict between the VE's testimony and

2  the DOT description of the document preparer position, the ALJ was required to question

3  the VE about how Plaintiff could perform this job in light of her restriction on

4  keyboarding.  See SSR 00-4p, 2000 WL 1898704, at *4 (providing that when a conflict

5  exists between VE testimony and information set forth in the DOT, the ALJ is required to

6  "obtain a reasonable explanation for the apparent conflict").  The ALJ must then explain

7  in his decision how he resolved the conflict.  Id.  "The procedural requirements of SSR

8  00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's

9  testimony, particularly in cases where the expert's testimony conflicts with the [DOT]."

10  Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007); see also Zavalin, 778 F.3d at

11  846 ("The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in

12  the record that precludes us from determining whether the ALJ's decision is supported by

13  substantial evidence.").  Here, the ALJ erred by failing to ask the VE about the conflict

14  between her testimony that Plaintiff could perform the document preparer job and the

15  DOT's description of the job duties for this position.  Without this inquiry, the Court

16  cannot determine from the record whether the ALJ's decision is supported by substantial

17  evidence.  Thus, the error is not harmless.  See Tommasetti v. Astrue, 533 F.3d 1035,

18  1038 (9th Cir. 2008) ("harmless error . . . exists when it is clear from the record that the

19  ALJ's error was inconsequential to the ultimate nondisability determination") (internal

20  quotation marks and citation omitted).

21          **b.**    **Production worker job**

22      Plaintiff also argues that the ALJ failed to address a conflict between the DOT's

23  description of the production worker job and the VE's testimony that she could perform

24  this work despite her limitations.  (J. Mot. at 7.)  Plaintiff maintains that employment as a

25  production worker requires assembling small parts, which, like keyboarding, was

26  excluded from her RFC.  (Id.)  The DOT describes the duties of a production

27  worker/slide-fastener-chain assembler (DOT 734.687-074) as follows:

28  / / /

**734.687-074 SLIDE-FASTENER-CHAIN ASSEMBLER**

Joins together stringers (sides) of slide fasteners, using slider jig: Aligns links of stringer with links of other stringer and inserts ends of stringers in slider jig.  Pulls ends of stringers through jig to interlock links.  Examines fastener for defects, such as crooked, broken, flattened, or misaligned links.  Cuts out defective section, using scissors, and splices sections, using adhesive tape or hand stapler.  May sew sections together to prevent raveling, using serging sewing machine.  May tend machine rollers that pull stringers through jig.

See DICOT 734.687-074, 1991 WL 679964.  The alternate titles of this job include assembler, slide fastener stringer, puller, and zipper joiner.  Id.

The ALJ determined that Plaintiff is "unable to do fine manipulation such as threading needles or assembling small parts."  (AR at 36.)  Yet, he adopted the VE's testimony that Plaintiff could perform work as a production worker.  (Id. at 41.)  It is apparent from the DOT's description of this occupation, however, that the inability to assemble small parts would be an obstacle to completing the job duties of a production worker.  Because the conflict was apparent, the ALJ was required to question the VE about how Plaintiff could perform this job notwithstanding her inability to assemble small parts.  See SSR 00-4p, 2000 WL 1898704, at *4.  He erred by failing to do so.  As with the document worker job, absent further inquiry of the VE and resolution of the conflict by the ALJ, the Court cannot determine from the present record whether the ALJ's decision is supported by substantial evidence.  Thus, the error is not harmless.

### c.    Table worker job

Plaintiff contends that the remaining 10,000 table worker jobs in the national economy do not amount to a significant number of jobs.  (J. Mot. at 7–8.)  The Ninth Circuit has not created a "bright-line rule" for what constitutes a "significant number" of jobs.  Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012).  However, "a comparison to other cases is instructive."  Id.  Plaintiff cites to Gutierrez v. Comm'r Soc. Sec., 740 F.3d 519 (9th Cir. 2014), to support her argument.  In Gutierrez, the Ninth Circuit upheld the

1   ALJ's finding that 25,000 jobs constituted a sufficient number but stated that it was a

2   "close call."  Id. at 529.  The Ninth Circuit provided further guidance in Randazzo v.

3   Berryhill, 725 F. App'x 446 (9th Cir. 2017).  There, the circuit court determined that "the

4   remaining 10,000 electrical accessories assembler jobs found by the expert may not

5   amount to a significant number of jobs in the national economy."  Id. at 448; see also De

6   Rivera v. Berryhill, 710 F. App'x 768, 769 (9th Cir. 2018) ("it is not clear that [5,000

7   national jobs] are sufficient.").

8          In this case, after discounting the document preparer and production worker

9   occupations, the remaining 10,000 table worker jobs available in the national economy is

10  not a sufficient number to support the ALJ's Step 5 determination.

11  **C.   Vocational Expert Testimony Regarding Sitting**

12         Plaintiff's second overarching argument is that the ALJ failed to address a conflict

13  in the VE's testimony regarding sitting and thus improperly relied on the expert's

14  opinion.  (J. Mot. at 16–18, 23–24.)  In phrasing his hypothetical question to the VE, the

15  ALJ asked the expert to assume that Plaintiff could sit for six hours and stand and/or walk

16  for two hours.  (AR at 74.)  In response, the VE provided testimony about three sedentary

17  jobs that Plaintiff could perform.  (Id.)  Plaintiff contends that because the ALJ limited

18  her to sitting for six hours a day, a conflict exists because sedentary work does not

19  contain a six-hour limit on sitting.  (J. Mot. at 16.)  She believes that in view of the

20  conflict, the ALJ needed to establish that the jobs identified by the VE did not require

21  more than six hours of sitting per day.  (Id. at 23–24.)  The Commissioner responds that

22  there was no obvious inconsistency between the VE's testimony and the DOT regarding

23  sitting requirements and refers to Plaintiff's argument as a "painstaking attempt at

24  manufacturing a conflict."  (Id. at 19.)

25         As set forth above, only conflicts that are "obvious or apparent" trigger the duty of

26  the ALJ to inquire further.  Lamear, 865 F.3d at 1205 (citing Gutierrez, 844 F.3d at 808).

27  Here, no obvious or apparent conflict exists because contrary to Plaintiff's assertion, the

28  ALJ did not find that Plaintiff had a six-hour sitting limitation.  Plaintiff attempts to

characterize the ALJ's reference to six hours of sitting in the hypothetical question to the VE as a limitation to sitting six hours a day, but this misconstrues the record. The RFC, as formulated by the ALJ, does not include a six-hour sitting maximum but rather states that Plaintiff retained the ability to perform "sedentary" work. (AR at 36.) "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." See 20 C.F.R. § 404.1567(a). Social Security Ruling 83-10 explains that "occasionally" means "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). As sedentary jobs require walking and standing occasionally, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Id.

After reviewing the hearing transcript and considering the full context of the record, it is evident that by asking the VE to assume that Plaintiff could "sit six hours and stand and/or walk two hours," (see AR at 74), the ALJ was not placing a limitation on Plaintiff's ability to sit but rather was referring to sedentary work. This is substantiated by the ALJ's follow-up question to the VE: "Would there be *other sedentary jobs* that could fit there?" Id. (emphasis added). Aside from the reference to sitting for six hours in his initial hypothetical question to VE, there is no indication in the ALJ's decision or in the record that Plaintiff had any sitting limitations. In fact, Plaintiff's argument that she has a restriction on sitting for more than six hours is inconsistent with the evidence in the record. Her medical records reflected no problems with sitting but rather with gait unsteadiness and balance issues while standing. (See, e.g., id. at 498 ("sways even with just standing with feet together" and "[k]eeps losing balance"), id. at 549 (indicating that Plaintiff had problems with balance and walking), id. at 635 ("[c]ontinues to experience gait unsteadiness, both standing and walking"), id. at 661 ("feeling unsteady, with loss of balance"); id. at 700 (reporting that balance was getting worse), id. at 797 ("Continues to

20cv1681-LR

complain of problems with gait imbalance.").)  Additionally, in her disability reports, Plaintiff's description of her condition and activities contains no mention of needing a limitation on sitting.  (See id. at 277, 282, 292, 296.)

Because the ALJ did not include a sitting limitation in Plaintiff's RFC, there was no apparent or obvious conflict in the VE's testimony with respect to sitting.

## D.  **Remedy**

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits.  (J. Mot. at 25.)  She requests in the alternative that the Court remand for additional proceedings.  (Id.)  The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  42 U.S.C. § 405(g); Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  A remand for an immediate award of benefits is appropriate only in rare circumstances.  See Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

In this case, the record is ambiguous because the ALJ did not resolve the conflict between the VE's testimony and the DOT.  Additional proceedings, including obtaining updated VE testimony to address the obvious conflicts that exist between the prior VE testimony and the DOT, can remedy the defects.  Accordingly, remand for additional proceedings is appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

20cv1681-LR

1

## IV.    CONCLUSION

2
    For the foregoing reasons, the final decision of the Commissioner is **REVERSED**,

3 and the case is **REMANDED** for further proceedings consistent with this opinion.  The

4 Clerk is directed to issue a judgment and close this case.

5
    **IT IS SO ORDERED**.

6 Dated:  March 16, 2023

7

8
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20cv1681-LR